1   David J. Millstein (CSB #87878)
    MILLSTEIN & ASSOCIATES
2   100 The Embarcadero Suite 200
    San Francisco, California 94105
3   Telephone:     (415) 348-0348
    Facsimile:     (415) 348-0336
4   E-mail:        dmillstein@millstein-law.com

5   Scott D. Gilbert*
    GILBERT OSHINSKY LLP
6   1100 New York Avenue, NW, Suite 700
    Washington, DC 20005
7   Telephone:     (202) 772-2200
    Facsimile:     (202) 772-1924
8   E-mail:        gilberts@gotofirm.com

9   *Application for admission *pro hac vice* to be filed

10  *Counsel for Plaintiffs*

11

**F I L E D**

DEC 2 4 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

12              UNITED STATES DISTRICT COURT

13        FOR THE NORTHERN DISTRICT OF CALIFORNIA

                  SAN FRANCISCO DIVISION
14

15  **CEDRIC BRADY, DR. CHARLES**              CV 08        5746
    **HOVDEN, MARION HOVDEN,**        Case No.
16  **DR. EUGENE KREPS, DR. JOHN**    )
    **McNAMARA, DR. HISAJI SAKAI, and** )
17  **JEAN SAKAI, Individually and On Behalf** )
    **Of All Others Similarly Situated,**      )   **COMPLAINT**
18                                             )
                                               )   **Class Action**
19                **Plaintiffs,**              )
                                               )   **DEMAND FOR JURY TRIAL**
20              **v.**                         )
                                               )
21                                             )
    **CONSECO, INC. and CONSECO LIFE**         )
22  **INSURANCE COMPANY,**                     )
                                               )
23                **Defendants**.              )
                                               )
24  _____  )

25        This is a class action brought by Plaintiffs individually and on behalf of all owners of

26  certain life insurance policies administered by Defendant Conseco, Inc. and/or its wholly-owned

27  subsidiary, Conseco Life Insurance Company (collectively, "Conseco" or "Defendants").

28  Plaintiffs seek injunctive, declaratory, and monetary relief requiring Defendants to reverse the

improper charges they unlawfully imposed on policyholders, to cease claiming that the policies' accumulation accounts are "under funded," and to restore the value of Plaintiffs' accumulation accounts to the levels at which they would be properly funded. Plaintiffs also seek punitive damages for Defendants' intentional and egregious misconduct. Accordingly, based on their personal knowledge, and on information and belief, Plaintiffs allege as follows:

## I.  SUMMARY OF ACTION

1.  Conseco and other insurance companies market whole life insurance as a conservative investment vehicle that will protect individuals and their families from financial uncertainty as they grow older. In addition to providing a death benefit, whole life insurance also accumulates a cash value that can be borrowed against or withdrawn at any time.

2.  Nearly twenty years ago, Cedric Brady, Dr. Charles Hovden, Marion Hovden, Dr. Eugene Kreps, Dr. John McNamara, Dr. Hisaji Sakai, and Jean Sakai (collectively, "Plaintiffs"), each purchased a whole life insurance policy called a "Lifetrend policy" from Massachusetts General Insurance Company, which was acquired by Conseco in 1996. Plaintiffs were told that their policies would buy them even more security in the future than most life insurance policies because the large front-loaded premiums and other associated costs would quickly "vanish," and the policies would become self-funding after a short number of years (approximately five years in most cases).

3.  Plaintiffs made substantial payments on their policies for several years, and, as they expected, the premiums and other charges soon vanished. Indeed, for the past ten-to-fifteen years, Plaintiffs have received annual statements indicating that their accounts were accumulating value and that the monthly interest earned by the accounts was sufficient to pay for all monthly expenses.

4.  On October 7, 2008, however, Conseco sent each Plaintiff a letter notifying them that their policies were substantially under funded, and explaining that Conseco had not notified them earlier due to an "administrative error." Conseco stated that to keep their policies active, Plaintiffs would have to make an enormous additional payment, ranging from \$80,000 to

$350,000. Conseco further stated that it was increasing the monthly fees on the policies from zero to an amount ranging between a few hundred and a few thousand dollars per month.

5. Conseco did not tell Plaintiffs, however, that for several years Conseco had systematically failed to recalculate the value of Plaintiffs' accounts. By instead claiming a mere "administrative error," Conseco attempted to, and did, mislead its policyholders. If Conseco had administered its accounts properly, it would have notified Plaintiffs as soon as their accounts were allegedly under funded. With that knowledge, Plaintiffs could have either made a minor payment to refund the value of their policies, or they could have surrendered their policies for the available cash value and purchased life insurance elsewhere (or otherwise invested the cash value). Instead, Conseco now asks for amounts that will be impossible for most, if not all, policyholders to pay. Moreover, Conseco improperly has raised monthly fees without any basis in order to make up for the shortfall caused by its errors.

6. This is not the first time that Conseco has attempted to pass an improper expense along to its policyholders. In *Rosenbaum v. Philadelphia Life, et al*, 2:93-cv-00834, the Central District of California found that Conseco had breached certain life insurance policies by increasing the expenses it charged on certain life insurance policies to make up for a new federal tax Congress had placed on life insurance companies. Conseco is doing the same thing here.

7. Most of the Plaintiffs and class members are in their 70s and 80s. They made substantial investments in these policies when they were younger so they would not have to pay monthly premiums after they retired. Now, Conseco is demanding huge payments and monthly charges from them in order to prevent forfeiture of the policies. Plaintiffs did not receive financial security with Conseco's policies, but rather, received nothing more than uncertainty and the potential to lose their investments altogether.

8. Conseco's actions constitute violations of state law, and Plaintiffs therefore bring claims for breach of contract; promissory estoppel; California's Consumers Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*, hereinafter "CLRA"); and similar state laws of all other states. Accordingly, Plaintiffs, on behalf of themselves and those similarly situated, seek all relief to

which they are entitled, including equitable relief, a refund of all moneys Conseco acquired by means of its unlawful conduct, statutory damages, actual damages, treble damages, punitive damages, reasonable attorney's fees, filing fees, and reasonable costs.

## II. PARTIES

9. Cedric T. Brady is, and at all times mentioned herein was, a resident and citizen of California. On December 15, 1987, Mr. Brady purchased a $420,676 Lifetrend IV Policy, Policy Number 10PM005886. Mr. Brady is 66 years old.

10. Dr. Charles N. Hovden is, and at all times mentioned herein was, a resident and citizen of California. On December 1, 1988, Mr. Hovden purchased a $500,000 Lifetrend IV Policy, Policy Number 10L0992610. Mr. Hovden is 83 years old.

11. Marion M. Hovden is, and at all times mentioned herein was, a resident and citizen of California. On February 15, 1989, Mrs. Hovden purchased a $500,000 Lifetrend IV Policy, Policy Number 10L1000650. Ms. Hovden is 81 years old.

12. Dr. Eugene Kreps is, and at all times mentioned herein was, a resident and citizen of California. On October 1, 1987, Mr. Kreps purchased a $1,000,000 Lifetrend IV policy, Policy Number 10L0926910. Mr. Kreps is 77 years old.

13. Dr. John McNamara is, and at all times mentioned herein was, a resident and citizen of California. On November 6, 1991, Mr. McNamara purchased a $1,512,359 Lifetrend IV Policy, Policy Number 1090009718. Mr. McNamara is 58 years old.

14. Dr. Hisaji Sakai is, and at all times mentioned herein was, a resident and citizen of California. On June 13, 1989, Mr. Sakai purchased a $75,000 Lifetrend IV Policy, Policy Number 10L1002680. Mr. Sakai is 83 years old.

15. Jean Sakai is, and at all times mentioned herein was, a resident and citizen of California. On June 14, 1989, Ms. Sakai purchased a $150,000 Lifetrend IV Policy, Policy Number 10L1011140. Ms. Sakai is 83 years old.

16. Defendant Conseco, Inc. is, and at all times mentioned herein was, a corporation duly organized and existing under the laws of Delaware, and by virtue of its ownership,

dominion and control over Conseco Life Insurance Company, is transacting the business of insurance in the State of California and within this judicial district.

17.     Defendant Conseco Life Insurance Company ("Conseco Life") is, and at all times mentioned herein was, a corporation duly organized and existing under the laws of Indiana and transacting business in California within this judicial district. Until 1996, Conseco Life was known as Massachusetts General Life Insurance Company ("Massachusetts General") and, in or about 1998, Philadelphia Life Insurance Company ("Philadelphia Life") was merged into Conseco Life. Both Massachusetts General and Philadelphia Life are now known as Conseco Life Insurance Company. Massachusetts General originally issued the Lifetrend policies at issue in this action.

## III.     JURISDICTION

18.     This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. § 1332(a). Conseco, Inc. is incorporated in Delaware and its principal place of business is located in Carmel, Indiana. Conseco Life Insurance Company is incorporated in Indiana and maintains its principal place of business in Carmel, Indiana. Each Plaintiff is a resident of California, and the amount in controversy for each of their claims exceeds $75,000, exclusive of interest and attorney's fees.

19.     This Court also has jurisdiction over all causes of action herein pursuant to 28 U.S.C. § 1332(d)(2). This suit is brought as a class action, the matter in controversy exceeds $5,000,000, and members of the purported class of Plaintiffs are from a different state from Defendants.

## IV.     VENUE

20.     Venue in this District is proper pursuant to 28 U.S.C. § 1391(a) because many of the wrongful acts, events and transactions that form the basis of this complaint took place within the district. Six of the named Plaintiffs reside in this District, purchased the policies while living in this District, and have received all communications from Conseco regarding the policies while living in this District.

## V. INTRADISTRICT ASSIGNMENT

21.     Assignment of this action to the San Francisco Division pursuant to Local Rule 3.2(c) is appropriate because six of the seven Plaintiffs reside in a county assigned to the San Francisco Division under Local Rule 3.2(d). Plaintiffs Dr. Charles Hovden and Marion Hovden reside in the County of San Francisco, and Plaintiffs Cedric Brady, Dr. Eugene Kreps, Dr. Hisaji Sakai and Jean Sakai reside in Contra Costa County. Plaintiff Dr. John McNamara resides in Los Angeles County. Accordingly, a substantial part of the events and omissions giving rise to their claims, as well as a substantial part of the properties at issue (the life insurance policies), are situated in this Division.

## VI. FACTUAL ALLEGATIONS

### A. Conseco, Inc. Dominates the Affairs of Conseco Life

22.     Conseco, Inc. is the ultimate parent holding company of Conseco Life, and through a series of intermediate holding companies, the owner of 100% of the stock of Conseco Life. Conseco, Inc. exercises complete dominion and control over the affairs and actions of Conseco Life, and there existed a unity of interest and ownership between Conseco, Inc. and Conseco Life at all relevant periods such that any individuality and separateness between them has ceased and should be disregarded.

23.     For example, on information and belief, Conseco, Inc. has caused, and continues to cause, Conseco Life to engage in numerous transfers of substantial funds to other entities within the Conseco group of companies. Those transactions have not been at arms length and have resulted in a substantial net loss to Conseco Life and its policyholders.

24.     Similarly, Conseco Life lacks the basic personnel to provide the essential insurance services required under the insurance laws of Conseco Life's principal place of business. Conseco, Inc. directly and indirectly owns certain non-insurance entities that provide all essential administrative and operating services for Conseco Life. Conseco Life pays the charges for these administrative and operating services.

25.     There are several other facts that demonstrate that Conseco Life should not be treated as a distinct and separate entity from Conseco, Inc.:

a. Conseco Life files income tax returns and SEC filings jointly with Conseco, Inc.

b. Conseco, Inc. and Conseco Life have the same attorneys.

c. Conseco, Inc., Conseco Life, and all related subsidiaries shared the same president and vice president/chief financial officer throughout the relevant period. Conseco, Inc., Conseco Life, and other related subsidiaries shared numerous directors through the relevant period.

d. Conseco Life does not possess its own independent rating from A.M. Best's Company, one of the nation's leading insurance rating firms. In fact, A.M. Best declares that the various Conseco entities operate under a "group structure" and the firm provides them with a single financial rating.

26. In sum, Conseco, Inc. owned, operated, managed, maintained, and controlled the activities of Conseco Life, and continues to do so. Therefore, the activities, acts, and omissions of Conseco Life were and are the activities, acts, and omissions of Conseco, Inc.

27. Adherence to the fiction of the separate existence of Conseco Life as an entity distinct from Conseco, Inc. would permit an abuse of the corporate privilege and would promote injustice and fraud by protecting Conseco, Inc. from liability for the wrongful acts alleged in this complaint.

28. Under these circumstances, Conseco, Inc. is the alter ego of Defendant Conseco Life because Conseco Life is a shell through which Conseco, Inc. carried on the business of insurance throughout the United States. Conseco, Inc. is fully responsible and liable for the wrongdoing as alleged in this complaint.

**B.** **Conseco Markets and Sells "Vanishing Premium" Policies**

29. Conseco markets, sells, and/or services Lifetrend, CIUL3+ Universal Life, and Group Universal Life 2000/3000 life insurance policies ("Conseco Life Policy" or "Conseco Life Policies"). The policies at issue in this lawsuit were marketed as having "vanishing premiums." With a "vanishing premium" policy, if the policyholder makes a series

of initial premium payments, then the policy becomes self-funded and the policyholder no longer needs to make premium payments; *i.e.*, the premiums "vanish."

30. Conseco distributed and sold the Conseco Life Policies through agents and brokers, and Conseco implemented an extensive marketing program to encourage agents and brokers to sell these vanishing premium Conseco Life Policies. The marketing failed to provide basic information essential to understanding how the policies actually work, including how monthly expenses are calculated.

31. Likewise, the policies fail to disclose exactly how the policy funding is maintained, how the premiums are calculated, and how the various expenses and payments that are deducted from the policy's account are calculated.

32. As a result, policyholders are unable to verify the accuracy of Conseco's calculations of a policy's value and of the various expenses that are charged to the policyholder throughout the life of the policy.

C. **How the Conseco Life Policies Work**

1. The Policy's Assets Accumulate

33. After a policyholder first purchases a Conseco Life Policy, the policyholder begins paying premiums on the policy.

34. The premium payments are placed in an "accumulation account." Every month, two basic adjustments are made to the account.

35. First, interest is added to the accumulation account. The Lifetrend policy, for example, provides that the interest rate will not fall below 4.5% per year, but that Conseco may use a higher interest rate at Conseco's sole discretion and based upon its expectation of future returns.

36. Second, a monthly deduction is taken from the accumulation account. The deduction consists of two parts: the "expense charge" and the "cost of insurance" charge. The expense charge is a constant that cannot exceed $5.00 per month. The cost of insurance charge is the result of an equation that Conseco does not disclose. Conseco only tells policyholders that the cost of insurance charge depends in part on the cost of insurance rate,

that the cost of insurance rate is based upon mortality rates, and that there is a maximum cost of insurance rate.

37. It is impossible for the policyholder to calculate what the monthly deduction on his or her policy should be, or whether Conseco is charging an appropriate deduction. The only information provided to the policyholder is that the monthly deduction will vary based on several factors: interest rates, mortality rates, expense factors, and premium payments.

38. On each annual anniversary date of the policy, the policyholder receives an annual report. The annual report summarizes certain values of the policy, including the value of the accumulation account, the monthly amounts deducted, and the monthly interest credited during the policy year. The report does not disclose the applicable cost of insurance rate.

2. The Policyholder May Use the Accumulated Assets to Pay for the Policy

39. The Conseco Life Policies are marketed as having premiums that "vanish." As set forth below, this description is not accurate.

40. The policyholder may participate in the "Optional Payment Provision," where the policyholder elects in writing either to cease paying premiums, or to pay reduced premiums. The Optional Payment Provision states that the policyholder may cease making premium payments as long as "the amount remaining in the accumulation account" exceeds the sum of the "guaranteed cash value," the applicable "surrender charge," and any indebtedness (*i.e.*, any loans that the policyholder takes from the accumulation account). If the account falls below this amount, it is "under funded."

41. The "guaranteed cash value" is the amount that the policyholder will receive if he or she chooses to "cash out" the policy. The guaranteed cash value increases every year the policy is in effect. The guaranteed cash value is listed on the Statement of Policy Cost and Benefit Information, though the listed value assumes that the policyholder continues to make the full premium payments and does not elect to participate in the Optional Payment Provision.

42. The surrender charge is a fee Conseco charges if the policyholder elects to surrender the policy for its proceeds. The surrender charge is not variable, though it decreases every year the policy is in effect.

43. Indebtedness is incurred if the policyholder elects to take a loan against the value of the policy. The policyholder may take a loan up to the amount in the accumulation account minus the surrender charge of the policy.

44. In sum, a policyholder may choose to stop making premium payments whenever the amount in the accumulation account is sufficient to cover the cash-out amount of the policy plus any loans that the policyholder has taken against the policy value. If the policyholder exercises this option, then the accumulation account's value increases only by interest payments, not by premium payments; and, the monthly deductions still are taken from the accumulation account.

3. What Happens When the Accumulated Assets Are Insufficient to Pay the Policy

45. If, at any point, the value in the accumulation accounts falls below the sum of the guaranteed cash value, the applicable surrender charge, and any indebtedness, then the policy will be under funded. When a policy is under funded, the policyholder must pay additional premiums until the policy is no longer under funded. In this respect, the premiums do not really "vanish."

46. According to the policy, if a policyholder fails to pay required premiums and the policy becomes under funded, then the policy will enter a sixty-one day grace period. Thirty days before the end of the grace period, Conseco is required to send a written notice to the policyholder notifying him or her that a premium payment is required.

47. If premiums are not paid before the end of the grace period, the policy will be in default and the non-forfeiture provision will be triggered.

48. Under the non-forfeiture provision, the policyholder has two options. First, the policyholder can elect to receive the net cash value of the policy. If the policyholder does not elect to receive the net cash value of the policy, then the "continuation of insurance" provision will go into effect, and the policy will continue to provide coverage in an amount equal to the proceeds of the policy until the net cash value is insufficient to cover the monthly deductions.

CLASS ACTION COMPLAINT - 10

49. Because the policy requires Conseco to provide the policyholder notice if the policy is under funded, then as long as the policyholder has not received notice, the policyholder knows and reasonably believes that the policy is adequately funded.

### D. Conseco Sends Annual Reports Indicating that the Policies are Adequately Funded and Minimal Fees are being Charged

50. Beginning with the first anniversary of the policy, Conseco is required to send policyholders annual statements.

51. The annual statements tell policyholders the payments they have made, the monthly expenses and cost of insurance deductions, what interest has been credited, and the rate at which interest has been credited. The annual statements do not tell policyholders the cost of insurance rate.

52. Over the years, Plaintiffs' annual statements and the statements of all members of the Class stated that the policies were performing as they had been marketed. The accumulated value of the accounts continued to increase and remained sufficient to cover the policies' monthly deductions.

53. For example, Cedric Brady's Annual Statement for the period from April 15, 1993 to April 16, 1994 showed that Conseco had charged monthly expenses of $2.49 and a cost of insurance charge varying between $83.29 and $94.21, and that his accumulation account had been credited with interest ranging from 5.25% to 6%. His annual statement for December 15, 1994 to December 16, 1995 showed that Conseco had charged him monthly expenses of $2.49 and a cost of insurance charge varying between $106.40 and $106.54, and that his accumulation account had been credited with interest ranging from 4.5% to 5.0%. Beginning with his annual statement for December 15, 1995 to December 16, 1996, and continuing through his most recent annual statement, Mr. Brady's annual statements showed that Conseco was not charging any monthly expenses or cost of insurance charges, and that his accumulation account had been credited with interest at 4.5%.

54. Dr. Hisaji Sakai's annual statement for June 13, 1993 to June 14, 1994 showed that Conseco had charged him monthly expenses of $2.49 and a cost of insurance charge varying

between $88.18 and $95.97, and that his accumulation account had been credited with interesting ranging from 5% to 6%. His annual statement for June 13, 1996 to June 14, 1997 showed that Conseco had charged him monthly expenses of $2.49 and a cost of insurance charge varying between $106.48 and $107.20, and that his accumulation account had been credited with interest at 4.5%. Dr. Sakai's annual statement for June 13, 2007 to June 14, 2008 showed that Conseco was not charging him monthly expenses or cost of insurance charges, and that his accumulation account had been credited with interest at 4.5%.

55.     Jean Sakai's annual statement for June 14, 1993 to June 15, 1994 showed that Conseco had charged her monthly expenses of $2.49 and a cost of insurance charge varying between $184.00 and $185.01, and that her accumulation account had been credited with interest ranging from 5% to 6%. Her annual statement for June 14, 1996 to June 15, 1997 showed that Conseco had charged her monthly expenses of $2.49 and a cost of insurance charge varying between $212.77 and $214.29, and that her accumulation account had been credited with interest at 4.5%. Her annual statement for June 14, 2007 to June 15, 2008 showed that Conseco charged her a monthly cost of insurance at $62.23 and credited her account with interest at 4.5%, but that Conseco had not charged her monthly expenses.

56.     Dr. John McNamara's annual statements from December 15, 1995 to December 16, 1996, and continuing through his most recent annual statement, showed that Conseco was not charging any monthly expenses or cost of insurance charges, and that his accumulation account had been credited with interest at 4.5%.

57.     Because Conseco did not disclose how it calculated the cost of insurance and other expenses for policies, policyholders had no way of knowing whether Conseco's calculations were accurate.

58.     Additionally, during the period in question, none of the Plaintiffs or Class members received any statement notifying them that under the Optional Payment Provision their policies were under funded or that they would need to make additional payments.

**E.    Conseco Realizes That It Has Made a Mistake in Billing Policyholders**

59.    As described above, the finances of a Lifetrend policy depend on the interaction of several variables. To administer the policies, Conseco is required to make monthly deductions and monthly deposits to the accumulation accounts. This in turn requires Conseco to review and update the non-guaranteed (*i.e.*, variable) elements of the policies on a monthly basis. These non-guaranteed elements include the cost of insurance rates, the interest paid on the policies, and the monthly expense charges.

60.    According to Conseco, the company realized in 2006 or 2007 that it had systematically failed to review and update the non-guaranteed aspects of its Lifetrend policies.

61.    Conseco claims to have relied on a program or procedure called an "Administrative Platform" to perform the monthly calculations. But, according to Conseco, the Administrative Platform was not performing properly with respect to certain policies, including the Lifetrend policies.

62.    By failing to administer the policies property, Conseco breached the policies and caused damages to Plaintiffs and all others similarly situated.

**F.    Conseco Sends Notices to Policyholders that Conceal**
**Conseco's Administrative Errors and Demand Payments**

63.    On or about October 2008, Conseco sent letters to its policyholders regarding "Important News About Your Life Insurance Policy Premium."

64.    The letters notified policyholders that, "due to administration issues related to your policy, you may not have previously been informed that your policy is Under Funded and additional premiums were required." The letters notified policyholders that their policies were substantially under funded and that they would receive a shortfall notification within 60 days.

>    a.    On October 7, 2008, Conseco sent Dr. Eugene Kreps a letter notifying him that his policy was under funded by $346,133.77.

>    b.    On October 7, 2008, Conseco sent Kenneth Hovden and Caren Hovden, the beneficiaries for Marion Hovden's Lifetrend policy, a letter notifying them that Marion Hovden's policy was under funded by $101,160.55.

  c. On October 7, 2008, Conseco sent Kenneth Hovden and Caren Hovden, the beneficiaries for Dr. Charles Hovden's Lifetrend policy, a letter notifying them that Dr. Hovden's policy was under funded by $80,243.64

  d. On October 7, 2008, Conseco sent Dr. Hirasji Sakai a letter notifying him that his policy was under funded by $23,339.66.

  e. On October 7, 2008 Conseco sent Jean Sakai a letter notifying her that her policy was under funded by $66,044.47.

  f. On October 7, 2008, Conseco sent Cedric Brady a letter notifying him that his policy was under funded by $93,619.56

  g. On October 7, 2008, Conseco sent Dr. John McNamara a letter notifying him that his policy was under funded by $187,262.23.

  h. On information and belief, all other Class members have received the same, or substantially similar, letters.

65. Because Conseco does not describe to policyholders the formula it uses to determine whether the policies are under funded, the policyholder cannot determine whether their policies actually are under funded.

66. Given the size by which Conseco has stated that each Plaintiff's policy was under funded, the policies must have been under funded for many years. Yet Conseco did not comply with the policies' under-funding provisions, under which the policies should have entered a sixty-one day grace period whenever Conseco believed the policies were under funded and Conseco should have provided the policyholders with thirty-day notice before the end of the grace period.

67. Had Conseco complied with these policy terms and timely notified Plaintiffs and other Class members as soon as Conseco believed that their policies became under funded, Plaintiffs and other Class members would have had the opportunity to make payments to fund the policies or surrender the policies for the then-available cash value, and Plaintiffs also would have been in a much better position to seek life insurance elsewhere.

68.     Conseco breached the policies by failing to notify Plaintiffs and other Class members as soon as Conseco believed that their policies became under funded. As a result, Plaintiffs have been injured by being required to pay increased insurance charges, by having their accumulation accounts depleted, and, if they are unable to pay the increased charges, by being compelled to surrender their life insurance policies.

### G.     Conseco Increases the Expense Charges and Cost of Insurance Charges to Compensate for its own Administrative Mistakes

69.     In the October 7, 2008 letters, Conseco informed Plaintiffs that, in addition to their policies being under funded, the monthly expense charge on their policies will increase to the maximum allowable amount – $5.00 per month, an increase from $0.00 per month – and the monthly cost of insurance charges will increase by substantial amounts.

> a.     The letter to Eugene Kreps stated that his monthly cost of insurance charges will increase from $0.00 to $2,426.06.
>
> b.     The letter to Kenneth Hovden and Caren Hovden stated that the monthly cost of insurance charges for Marion Hovden's policy (for which Kenneth and Caren are beneficiaries) will increase from $0.00 to $920.08.
>
> c.     The letter to Kenneth Hovden and Caren Hovden stated that the cost of insurance charges for Charles Hovden's policy (for which Kenneth and Caren are beneficiaries) will increase from $0.00 to $2,013.61.
>
> d.     The letter to Hisaji Sakai stated that his monthly cost of insurance charges will increase from 0.00 to $245.95.
>
> e.     The letter to Jean Sakai stated that her monthly cost of insurance charges will increase from $62.50 to $560.02.
>
> f.     The letter to Cedric Brady stated that his monthly cost of insurance charges will increase from $0.00 to $426.95.
>
> g.     The October 7, 2008 letter to John McNamara stated that his monthly cost of insurance charges will increase from $0.00 to $1,015.61.

h.     On information and belief, all other Class members received substantially
similar letters.

70.     Although Conseco stated in these letters that Plaintiffs' and other class members'
new monthly cost of insurance charges are based on cost of insurance rates that do not exceed
the maximum allowable rate, Conseco did not disclose the actual rate, how far below the
maximum allowable rate the new rate was, what the previous rate had been, or how the cost of
insurance rate was calculated.

71.     On information and belief, changes in interest rates, mortality rates, expense
factors, and premium payments made by policyholders have not been substantial enough to
warrant the increased change in cost of insurance rates that Conseco is now charging its
policyholders.

72.     By increasing the cost of insurance charges to correct for Conseco's failure to
administer properly the policies, Conseco has breached the policies. The Lifetrend policies do
not permit Conseco to increase the cost of insurance charge to reimburse itself for its own
administrative errors. As a result, Plaintiffs and other Class members have been injured by being
required to pay increased insurance charges, and, if they are unable to pay the increased charges,
by being compelled to surrender their life insurance policies.

## VII.     CLASS ALLEGATIONS

73.     This action is brought by Plaintiffs individually and on behalf of a class pursuant
to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure.

### A.     Class Definition

74.     The "Nationwide Class" is defined as follows:

All United States residents who own Lifetrend, CIUL3+ Universal Life, and
Group Universal Life 2000/3000 policies that have been acquired and serviced
by Conseco Life Insurance Company. The class does not include Massachusetts
General Life Insurance Company, Conseco Life Insurance Company, or
Conseco, Inc.; any of their subsidiaries, parents, and other affiliates; or any
officers, directors, actuaries, or employees of these entities (and their immediate

families); or any legal representatives, heirs, and assigns of these entities. Also excluded are any judicial officers who preside over this action and any juror that participates in this lawsuit.

75.    The "California Subclass" is defined as follows:

All California residents who own Lifetrend, CIUL3+ Universal Life, and Group Universal Life 2000/3000 policies that have been acquired and serviced by Conseco Life Insurance Company. The class does not include Massachusetts General Life Insurance Company, Conseco Life Insurance Company, Conseco, Inc.; any of their subsidiaries, parents, and other affiliates; any officers, directors, actuaries, and employees of these entities (and their immediate families); or any legal representatives, heirs, or assigns of these entities. Also excluded are any judicial officers who preside over this action and any juror that participates in this lawsuit.

76.    The Nationwide Class and the California Subclass are collectively referred to as the "Class."

**B.    Impracticability of Joinder (FRCP 23(a)(1))**

77.    The Class consists of thousands of consumers of life insurance and is so numerous that joinder of all members is impracticable. Therefore, the disposition of Plaintiffs' and the other Class members' claims in a class action will provide substantial benefits to the parties and the Court, as this will promote the orderly and expeditious administration and adjudication of the Class members' claims, foster economics of time, effort, and resources, and ensure uniformity of decisions.

78.    Furthermore, the Class is ascertainable because it consists of a definable class of individuals who own Conseco Life Polices, the identities and addresses of whom can be ascertained readily from business records maintained by Conseco Life. And, there is a well-defined community of interest in the questions of law or fact alleged because each Class member was similarly harmed by Conseco's uniform conduct.

## C. Commonality (FRCP 23(a)(2))

79.     This case arises from Conseco's uniform failure to administer properly the life insurance policies of thousands of consumers. Conseco's conduct has affected all members of the Class similarly. Thus, the central questions of fact and law in this case are common to the Class as a whole under Rule 23(a)(2), and the requested relief will depend on questions of law that apply in the same manner to each member of the Class. The common questions of law or fact include, but are not limited to, the following:

    a.    whether Conseco breached the policies by failing to calculate the value of the accumulation account on a monthly basis;

    b.    whether Conseco breached the policies by failing to notify Class members as soon as Conseco believed that their policies became under funded;

    c.    whether Conseco breached the policies by increasing the monthly expense charges and cost of insurance charges to account for its administrative errors;

    d.    whether Conseco breached obligations of good faith and fair dealing owed to Plaintiffs and members of the California Subclass;

    e.    whether Conseco broke its promise that it would inform Plaintiffs and Class members whenever their policies became under funded;

    f.    whether Conseco broke its promises that Plaintiffs' and Class members' policies were being properly maintained and were sufficiently funded;

    g.    whether Conseco violated the California Consumer Legal Remedies Act Section 1770, *et seq.*; and

    h.    whether Conseco violated the consumer protection laws of all other states in which it sold Conseco Life Policies.

## D. Typicality (FRCP 23(a)(3))

80.     The claims asserted by Plaintiffs are typical of the claims of the Class because each Plaintiff owns Conseco Life Policies that Conseco uniformly has failed to administer properly by allowing the policies to become under funded without notifying Plaintiffs, and by

assessing improper charges to make up for the shortfalls. Thus, each Class member was wronged by the same offending conduct, and proof of Plaintiffs' claims will similarly prove the claims of absent members of the Class.

### E.    Fair and Adequate Representation (FRCP 23(a)(4))

81.    Plaintiffs will fairly and adequately protect the interests of the Class because their claims are common to the Class and proof of those claims will prove the claims of absent Class members. Plaintiffs' interests are in harmony with, not adverse to, the interests of the other Class members. Plaintiffs intend to pursue this litigation vigorously, and they have selected as their counsel Gilbert Oshinsky LLP and Millstein & Associates, attorneys who are knowledgeable and experienced in insurance matters and other complex civil litigation. Counsel also have served as class counsel in other complex insurance matters.

82.    Plaintiffs request that the Court afford Class members with notice and the right to opt out of any Class certified in this action.

### F.    Class Certification is Appropriate Under Rule 23(b)(2)

83.    This action is appropriate as a class action pursuant to Rule 23(b)(2). Plaintiffs seek injunctive relief and corresponding declaratory and incidental monetary relief for the Class. Defendants acted in a manner generally applicable to the entire Class by:

    a.    failing to administer properly the Class's policies and recalculate the value of the accumulation accounts;

    b.    failing to notify Class members as soon as their policies became under funded;

    c.    sending Class members letters demanding additional payments that attempted to conceal Conseco's unilateral mistake as an "administrative error;" and

    d.    assessing improper charges in order to make up for the shortfall caused by Conseco's conduct.

84.    Defendants' wrongful attempts to conceal its unilateral mistake as an "administrative error" and to increase the expense charges and cost of insurance charges

for factors unrelated to the variable elements of the policies, if not enjoined, will subject Class members to enormous continuing future harm and will cause irreparable injuries to Class members who are compelled to surrender their life insurance policies with no economically viable options for alternative life insurance. Although Class members have already sustained damages in the form of increased insurance charges and depleted assets, the adverse financial impact of Defendants' unlawful actions is continuing and, unless enjoined, will cause substantially higher damages to Class members in future years. Thus, injunctive and other equitable and declaratory relief are the primary goals in this litigation. Plaintiffs would bring this suit to obtain injunctive and declaratory relief even in the absence of available monetary remedies, and injunctive and declaratory relief are reasonably necessary and appropriate when Plaintiffs prevail.

85. The monetary relief sought on behalf of the Class to remedy Defendants' wrongful conduct flows directly from Defendants' liability to the Class as a whole and can be objectively determined. The increased insurance charges and depletion of assets can be mathematically quantified and do not depend on any subjective assumptions or idiosyncrasies that are peculiar to individual class members.

86. In addition, because Plaintiffs request the Court to afford notice to Class members and the right to opt out of any Class certified by the Court, certification of Plaintiffs' claims for punitive damages under Rule 23(b)(2) also is appropriate.

### G. Class Certification is Appropriate Under Rule 23(b)(3)

87. Class certification also is appropriate under Rule 23(b)(3) because common questions of law and fact predominate over individual questions and a class action is a superior vehicle for addressing Defendants' conduct.

1. Predominance

88. Questions of law and fact that are common to Plaintiffs and the Class predominate over questions affecting only individual members in accordance with Rule 23(b)(3). This action predominately concerns Defendants' actions, namely, Defendants' unilateral and uniform mistake in administering and funding Plaintiffs' life insurance policies, and their wrongful

attempts to conceal their unilateral mistake as an "administrative error" and to increase the expense charges and cost of insurance charges for factors unrelated to the variable elements of the policies. Defendants' conduct toward Plaintiffs and each Class member was the same in this regard. Further, the impact of Defendant's conduct on Plaintiffs and the Class was also standard, that is, all Class members have lost value in an asset and are being required to pay additional monies to protect that asset.

### 2. Superiority

89.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Given the size and expense of litigating individual Class members' claims, few, if any, Class members could afford to or would seek legal redress individually for the wrongs Conseco committed against them, and absent Class members have no substantial interest in individually controlling the prosecution of individual actions. Other available means of adjudicating the claims of Plaintiffs and the Class – such as thousands of individual actions brought separately and pursued independently in courts across the country – are impracticable and inefficient. Without a class action, Class members will continue to suffer damages and Conseco's violations of law will proceed without remedy. When Conseco's liability has been adjudicated, claims of all Class members can be administered efficiently and determined by the Court. Finally, this action presents no difficulties that would impede its management by the Court as a class action. Thus, this action will cause an orderly and expeditious administration of Class claims; economies of time, effort and expense will be fostered; and uniformity of decisions will be insured.

90.     Plaintiffs demand a jury trial.

## COUNT ONE

### (Breach of Contract)

91.     Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 90 as though fully stated herein.

92.     Plaintiffs each entered into a contract with Conseco when they purchased their life insurance policies.

93. At all relevant times, Plaintiffs and members of the Class have paid to Defendants all premiums and charges due under the policies as established at the inception of the policies, and they have performed all obligations and conditions under the policies.

94. Defendants owed duties and obligations to Plaintiffs and members of the Class under the policies, including the duty to administer properly the policies. This included the duty to determine the appropriate monthly deductions from the policies' accumulation accounts in accordance with the policies' provisions; to notify the policyholders whenever Conseco believed that the policies became under funded; and to refrain from increasing the cost of insurance charges for reasons unrelated to the mortality experience of Conseco Life.

95. Defendants materially breached the terms and provisions of the policies:

a. by failing to determine the appropriate monthly deductions from the policies' accumulation accounts in accordance with the policies' terms and conditions;

b. by failing to notify policyholders as soon as Conseco believed that their policies were under funded within the time frame required by the policies; and

c. by requiring Plaintiffs and other Class members to pay insurance charges solely to reimburse Conseco Life and/or Conseco Inc. for alleged shortfalls caused by their own errors.

96. As a direct and proximate result of Defendants' conduct, Plaintiffs and the Class members have been damaged in an amount to be determined at trial. Plaintiffs' and the Class members' damages include, but are not limited to, the loss of the value in their life insurance policies; any insurance charges Plaintiffs and the Class members have paid based on Conseco's improperly increased insurance charges; and any damages suffered by Plaintiffs from foregoing opportunities to purchase other life insurance policies in reliance on Defendants' promises regarding the terms and benefits of the policies at issue.

WHEREFORE, Plaintiffs demand relief in accordance with the "Prayer for Relief" set forth below, which is incorporated herein by this reference.

## COUNT TWO

### (Promissory Estoppel)

97. Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 96 as though fully stated herein.

98. In the policies, Conseco made a promise to Plaintiffs and members of the Class that it would inform them whenever their policies became under funded. Each month that Conseco did not inform Plaintiffs and Class members that their policies were under funded, or that they owed insurance expenses, Conseco promised Plaintiffs and the Class members that their policies were adequately funded and that they did not owe insurance expenses.

99. In reliance on these promises, Plaintiffs and Class members justifiably did not make additional premium payments, did not cash out or terminate their policies, and did not seek life insurance policies elsewhere.

100. Plaintiffs and Class members relied on these promises to their detriment. By failing to make additional payments, by failing to cash out or terminate their policies, and by failing to seek life insurance elsewhere, Plaintiffs and Class members could lose their life insurance benefits and may not be able to procure comparable life insurance elsewhere.

101. As a direct and proximate result of Defendants' conduct, Plaintiffs have been damaged in an amount to be determined at trial. Plaintiffs' damages include, but are not limited to, the loss of the value in their life insurance policies; any insurance charges Plaintiffs have paid based on Conseco's improperly increased insurance charges; and any damages suffered by Plaintiffs from foregoing opportunities to purchase other life insurance policies in reliance on Defendants' promises regarding the terms and benefits of the policies at issue.

WHEREFORE, Plaintiffs demand relief in accordance with the "Prayer for Relief" set forth below, which is incorporated herein by this reference.

## COUNT THREE

## (Violation of CLRA Section 1770(a)(5))

## (California Subclass Only)

102.    Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 101 as though fully stated herein.

103.    Under section 1770(a)(5) of the CLRA, it is unlawful to represent that goods or services have characteristics, ingredients, uses, benefits, or quantities that they do not have in any transaction intended to result or resulting in the sale or lease of goods or services to any consumer.

104.    As set forth above, Defendants represented to Plaintiffs and members of the California Subclass that the life insurance policies have vanishing premiums, such that premiums do not have to be paid once the policies become and remain adequately funded.  Defendants also represented that they would charge insurance expenses only in accordance with the policies' provisions, which provide that the only variable in the cost of insurance is the mortality experience of the company.

105.    Defendants made these representations uniformly to Plaintiffs and the members of the California Subclass, who reasonably relied on those representations when they purchased and maintained their life insurance policies.

106.    These representations were untrue and/or misleading.  In fact, Defendants failed to charge premiums to maintain the funding of Plaintiffs' and other California Subclass members' accumulation accounts.  To correct for this failure, Defendants are subjecting Plaintiffs and other California Subclass members to cost of insurance charges that are based not on mortality rates but rather on the magnitude by which Defendants' failure to properly administer the life insurance policies resulted in those policies being under funded.

107.    Accordingly, Plaintiffs and the other California Subclass members have suffered injury in fact and have lost money or property as a result of Defendants' untrue representations.

108.    Based on the foregoing facts, Defendants' practices violated section 1770(a)(5) of the CLRA, and Plaintiffs and the other California Subclass members are entitled, pursuant to

1  sections 1780(a)(2) and (3) of the CLRA, to an order: (1) enjoining the above-described

2  wrongful acts and practices; and (2) requiring payment of restitution to Plaintiffs and the other

3  California Subclass members. In addition, Plaintiffs and the other California Subclass members

4  are entitled to the payment of costs and attorneys fees and any other relief deemed appropriate by

5  the Court under section 1780(d) of the CLRA and section 1021.5 of California's Civil Procedure

6  Code.

7  109.  In compliance with the provisions of section 1782 of the CLRA, and in

8  conjunction with the filing of this action, while the Complaint is an appropriate notice of

9  violation, Plaintiffs and the California Subclass members will notify Defendants in writing of

10 their particular violations of the CLRA, and demand that Defendants rectify the actions described

11 therein and give notice to all affected consumers of its intent to do so. Plaintiffs and the

12 California Subclass members will send this notice to Defendants by certified mail, return receipt

13 requested, at the address of Defendants' agent or principal place of business in the State of

14 California.

15 110.  If Defendants fail, within thirty (30) days after receipt of the section 1782 notice

16 and demand, to adequately respond to Plaintiffs' and the California Subclass members' demands

17 to rectify the wrongful conduct described above with respect to all California Subclass members,

18 Plaintiffs and the California Subclass members reserve their rights to amend the Complaint to

19 seek actual and punitive damages for violations of the CLRA as provided for under sections

20 1780(a) and 1782(d) of the CLRA.

### COUNT FOUR

### (Violation of CLRA Section 1770(a)(7))

### (California Subclass Only)

24 111.  Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1

25 through 110 as though fully restated herein.

26 112.  Under section 1770(a)(7) of the CLRA, it is unlawful to represent that goods or

27 services are of a particular standard, quality, or grade if they are of another in any transaction

28 intended to result or resulting in the sale or lease of goods or services to any consumer.

113. As set forth above, Defendants represented to Plaintiffs and members of the California Subclass that the life insurance policies have vanishing premiums, such that premiums do not have to be paid once the policies become and remain adequately funded. Defendants also represented that they would charge insurance expenses only in accordance with the policies' provisions, which provide that the only variable in the cost of insurance is the mortality experience of the company.

114. Defendants made these representations uniformly to Plaintiffs and the members of the California Subclass, who reasonably relied on those representations when they purchased and maintained their life insurance policies.

115. These representations were untrue and/or misleading. In fact, Defendants failed to charge premiums to maintain the funding of Plaintiffs' and other California Subclass members' accumulation accounts. To correct for this failure, Defendants are subjecting Plaintiffs and other California Subclass members to cost of insurance charges that are based not on mortality rates but rather on the magnitude by which Defendants' failure to properly administer the life insurance policies resulted in those policies being under funded.

116. Accordingly, Plaintiffs and the other California Subclass members have suffered injury in fact and have lost money or property as a result of Defendants' untrue representations.

117. Based on the foregoing facts, Defendants' practices violated section 1770(a)(7) of the CLRA, and Plaintiffs and the other California Subclass members are entitled, pursuant to sections 1780(a)(2) and (3) of the CLRA, to an order: (1) enjoining the above-described wrongful acts and practices; and (2) requiring payment of restitution to Plaintiffs and the other California Subclass members. In addition, Plaintiffs and the other California Subclass members are entitled to the payment of costs and attorneys fees and any other relief deemed appropriate by the Court under section 1780(d) of the CLRA and section 1021.5 of California's Civil Procedure Code.

118. In compliance with the provisions of section 1782 of the CLRA, and in conjunction with the filing of this action, while the Complaint is an appropriate notice of violation, Plaintiffs and the California Subclass members will notify Defendants in writing of

1  their particular violations of the CLRA, and demand that Defendants rectify the actions described

2  therein and give notice to all affected consumers of its intent to do so. Plaintiffs and the

3  California Subclass members will send this notice to Defendants by certified mail, return receipt

4  requested, at the address of Defendants' agent or principal place of business in the State of

5  California.

6      119.    If Defendants fail, within thirty (30) days after receipt of the section 1782 notice

7  and demand, to adequately respond to Plaintiffs' and the California Subclass members' demands

8  to rectify the wrongful conduct described above with respect to the California Subclass members,

9  Plaintiffs and the California Subclass members reserve their rights to amend the Complaint to

10  seek actual and punitive damages for violations of the CLRA as provided for under sections

11  1780(a) and 1782(d) of the CLRA.

## COUNT FIVE

### (Violation of CLRA Section 1770(a)(9))

### (California Subclass Only)

15     120.    Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1

16  through 119 as though fully restated herein.

17     121.    Under section 1770(a)(9) of the CLRA, it is unlawful to advertise goods or

18  services with intent not to sell them as advertised in any transaction intended to result or

19  resulting in the sale or lease of goods or services to any consumer.

20     122.    As set forth above, Defendants represented to Plaintiffs and members of the

21  California Subclass that the life insurance policies have vanishing premiums, such that premiums

22  do not have to be paid once the policies become and remain adequately funded. Defendants also

23  represented that they would charge insurance expenses only in accordance with the policies'

24  provisions, which provide that the only variable in the cost of insurance is the mortality

25  experience of the company.

26     123.    Defendants made these representations uniformly to Plaintiffs and the members of

27  the California Subclass, who reasonably relied on those representations when they purchased and

28  maintained their life insurance policies.

1    124.    These representations were untrue and/or misleading. In fact, Defendants failed

2    to charge premiums to maintain the funding of Plaintiffs' and other California Subclass

3    members' accumulation accounts. To correct for this failure, Defendants are subjecting

4    Plaintiffs and other California Subclass members to cost of insurance charges that are based not

5    on mortality rates but rather on the magnitude by which Defendants' failure to properly

6    administer the life insurance policies resulted in those policies being under funded.

7    125.    Accordingly, Plaintiffs and the other California Subclass members have suffered

8    injury in fact and have lost money or property as a result of Defendants' untrue representations.

9    126.    Based on the foregoing facts, Defendants' practices violated section 1770(a)(9) of

10   the CLRA, and Plaintiffs and the other California Subclass members are entitled, pursuant to

11   sections 1780(a)(2) and (3) of the CLRA, to an order: (1) enjoining the above-described

12   wrongful acts and practices; and (2) requiring payment of restitution to Plaintiffs and the other

13   California Subclass members. In addition, Plaintiffs and the other California Subclass members

14   are entitled to the payment of costs and attorneys fees and any other relief deemed appropriate by

15   the Court under section 1780(d) of the CLRA and section 1021.5 of California's Civil Procedure

16   Code.

17   127.    In compliance with the provisions of section 1782 of the CLRA, and in

18   conjunction with the filing of this action, while the Complaint is an appropriate notice of

19   violation, Plaintiffs and the California Subclass members will notify Defendants in writing of

20   their particular violations of the CLRA, and demand that Defendants rectify the actions described

21   therein and give notice to all affected consumers of its intent to do so. Plaintiffs and the

22   California Subclass members will send this notice to Defendants by certified mail, return receipt

23   requested, at the address of Defendants' agent or principal place of business in the State of

24   California.

25   128.    If Defendants fail, within thirty (30) days after receipt of the section 1782 notice

26   and demand, to adequately respond to Plaintiffs' and the California Subclass members' demands

27   to rectify the wrongful conduct described above with respect to all Class members, Plaintiffs and

28   the California Subclass members reserve their right to amend the Complaint to seek actual and

1    punitive damages for violations of the CLRA as provided for under sections 1780(a) and 1782(d)
2    of the CLRA.

3                                          **COUNT SIX**

4                          **(Violation of CLRA Section 1770(a)(14))**

5                                  **(California Subclass Only)**

6          129.    Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1
7    through 128 as though fully restated herein.

8          130.    Under section 1770(a)(14) of the CLRA, it is unlawful to represent that a
9    transaction confers or involves rights, remedies, or obligations which it does not have or involve
10   in any transaction intended to result or resulting in the sale or lease of goods or services to any
11   consumer.

12         131.    As set forth above, Defendants represented to Plaintiffs and members of the
13   California Subclass that the life insurance policies have vanishing premiums, such that premiums
14   do not have to be paid once the policies become and remain adequately funded. Defendants also
15   represented that they would charge insurance expenses only in accordance with the policies'
16   provisions, which provide that the only variable in the cost of insurance is the mortality
17   experience of the company.

18         132.    Defendants made these representations uniformly to Plaintiffs and the members of
19   the California Subclass, who reasonably relied on those representations when they purchased and
20   maintained their life insurance policies.

21         133.    These representations were untrue and/or misleading. In fact, Defendants failed
22   to charge premiums to maintain the funding of Plaintiffs' and other California Subclass
23   members' accumulation accounts. To correct for this failure, Defendants are subjecting
24   Plaintiffs and other California Subclass members to cost of insurance charges that are based not
25   on mortality rates but rather on the magnitude by which Defendants' failure to properly
26   administer the life insurance policies resulted in those policies being under funded.

27         134.    Accordingly, Plaintiffs and the other California Subclass members have suffered
28   injury in fact and have lost money or property as a result of Defendants' untrue representations.

---

135. Based on the foregoing facts, Defendants' practices violated section 1770(a)(14) of the CLRA, and Plaintiffs and the other California Subclass members are entitled, pursuant to sections 1780(a)(2) and (3) of the CLRA, to an order: (1) enjoining the above-described wrongful acts and practices; and (2) requiring payment of restitution to Plaintiffs and the other California Subclass members. In addition, Plaintiffs and the other California Subclass members are entitled to the payment of costs and attorneys fees and any other relief deemed appropriate by the Court under section 1780(d) of the CLRA and section 1021.5 of California's Civil Procedure Code.

136. In compliance with the provisions of section 1782 of the CLRA, and in conjunction with the filing of this action, while the Complaint is an appropriate notice of violation, Plaintiffs will notify Defendants in writing of their particular violations of the CLRA, and demand that Defendants rectify the actions described therein and give notice to all affected consumers of its intent to do so. Plaintiffs will send this notice to Defendants by certified mail, return receipt requested, at the address of Defendants' agent or principal place of business in the State of California.

137. If Defendants fail, within thirty (30) days after receipt of the section 1782 notice and demand, to adequately respond to Plaintiffs' and the California Subclass members' demands to rectify the wrongful conduct described above with respect to all California Subclass members, Plaintiffs and the California Subclass members reserve their right to amend the Complaint to seek actual and punitive damages for violations of the CLRA as provided for under sections 1780(a) and 1782(d) of the CLRA.

## **COUNT SEVEN**

### **(Violation of CLRA Section 1770(a)(17))**

### **(California Subclass Only)**

138. Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 137 as though fully restated herein.

139. Under section 1770(a)(17) of the CLRA, it is unlawful to falsely or misleadingly represent that the consumer will receive a rebate, discount, or other economic benefit, if the

1   earning of the benefit is contingent on an event to occur subsequent to the consummation of the

2   transaction in any transaction intended to result or resulting in the sale or lease of goods or

3   services to any consumer.

4   140.    As set forth above, Defendants represented to Plaintiffs and members of the

5   California Subclass that the life insurance policies have vanishing premiums, such that premiums

6   do not have to be paid once the policies become and remain adequately funded. Defendants also

7   represented that they would charge insurance expenses only in accordance with the policies'

8   provisions, which provide that the only variable in the cost of insurance is the mortality

9   experience of the company.

10   141.    Defendants made these representations uniformly to Plaintiffs and the members of

11   the California Subclass, who reasonably relied on those representations when they purchased and

12   maintained their life insurance policies.

13   142.    These representations were untrue and/or misleading. In fact, Defendants failed

14   to charge premiums to maintain the funding of Plaintiffs' and other California Subclass

15   members' accumulation accounts. To correct for this failure, Defendants are subjecting

16   Plaintiffs and other California Subclass members to cost of insurance charges that are based not

17   on mortality rates but rather on the magnitude by which Defendants' failure to properly

18   administer the life insurance policies resulted in those policies being under funded.

19   143.    Accordingly, Plaintiffs and the other California Subclass members have suffered

20   injury in fact and have lost money or property as a result of Defendants' untrue representations.

21   144.    Based on the foregoing facts, Defendants' practices violated section 1770(a)(17)

22   of the CLRA, and Plaintiffs and the other California Subclass members are entitled, pursuant to

23   sections 1780(a)(2) and (3) of the CLRA, to an order: (1) enjoining the above-described

24   wrongful acts and practices; and (2) requiring payment of restitution to Plaintiffs and the other

25   California Subclass members. In addition, Plaintiffs and the other California Subclass members

26   are entitled to the payment of costs and attorneys fees and any other relief deemed appropriate by

27   the Court under section 1780(d) of the CLRA and section 1021.5 of California's Civil Procedure

28   Code.

1    145.    In compliance with the provisions of section 1782 of the CLRA, and in

2    conjunction with the filing of this action, while the Complaint is an appropriate notice of

3    violation, Plaintiffs and the California Subclass members will notify Defendants in writing of

4    their particular violations of the CLRA, and demand that Defendants rectify the actions described

5    therein and give notice to all affected consumers of its intent to do so. Plaintiffs and the

6    California Subclass members will send this notice to Defendants by certified mail, return receipt

7    requested, at the address of Defendants' agent or principal place of business in the State of

8    California.

9    146.    If Defendants fail, within thirty (30) days after receipt of the section 1782 notice

10   and demand, to adequately respond to Plaintiffs' and the California Subclass members' demands

11   to rectify the wrongful conduct described above with respect to all California Subclass members,

12   Plaintiffs and the California Subclass members reserve their right to amend the Complaint to

13   seek actual and punitive damages for violations of the CLRA as provided for under sections

14   1780(a) and 1782(d) of the CLRA.

## COUNT EIGHT

### (Violation of the Consumer Protection Statutes of Certain States)

17   147.    Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1

18   through 146 as though fully stated herein.

19   148.    As set forth above, Defendants represented to Plaintiffs and members of the Class

20   that the life insurance policies have vanishing premiums, such that premiums do not have to be

21   paid once the policies become and remain adequately funded. Defendants also represented that

22   they would charge insurance expenses only in accordance with the policies' provisions, which

23   provide that the only variable in the cost of insurance is the mortality experience of the company.

24   149.    Defendants made these representations uniformly to Plaintiffs and the members of

25   the Class, who reasonably relied on those representations when they purchased and maintained

26   their life insurance policies.

27   150.    These representations were untrue and/or misleading. In fact, Defendants failed

28   to charge premiums to maintain the funding of Plaintiffs' and other Class members'

accumulation accounts. To correct for this failure, Defendants are subjecting Plaintiffs and other Class members to cost of insurance charges that are based not on mortality rates but rather on the magnitude by which Defendants' failure to properly administer the life insurance policies resulted in those policies being under funded.

151. Accordingly, Plaintiffs and the other Class members have suffered injury in fact and have lost money or property as a result of Defendants' untrue representations.

152. Conseco's actions as described above constitute unfair competition or trade or unfair, unconscionable, deceptive, or fraudulent acts or practices in violation of the consumer protection and unfair trade practices laws of each of the states in which Conseco sold Conseco Life Policies. These states have adopted statutes that contain substantially the same or similar statutory provisions and schemes to prohibit deceptive and unfair practices and to protect consumers, and to allow private rights of action under such statutes.

153. Plaintiffs and the other Class members have suffered damages and/or are entitled to the statutory remedies made available by the comparable consumer protection and unfair trade practices laws of each state in which Conseco sold Conseco Life Policies. Plaintiffs also are entitled to injunctive and equitable relief, punitive damages, and other penalties as provided by those laws.

WHEREFORE, Plaintiffs demand relief in accordance with the "Prayer for Relief" set forth below, which is incorporated herein by this reference.

## COUNT NINE

### (Violation of Duty of Good Faith and Fair Dealing)

### (California Subclass Only)

154. Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 153 as though fully stated herein.

155. Plaintiffs and members of the California Subclass purchased their policies in the reasonable expectation that the policies would provide complete and adequate life insurance coverage for their protection, that Defendants would take all reasonable steps to ensure that the

1  policies were adequately funded by charging premiums and otherwise managing their
2  accumulated accounts, and that Defendants would not unlawfully increase the costs of the
3  policies.

4      156.    Plaintiffs and members of the California Subclass also purchased their policies
5  with the reasonable expectation that Defendants would deal with them fairly, equitably, in good
6  faith, and in full conformity with the expressed and implied terms of the policies. This
7  expectation was brought about and intended by Defendants as a result of the contractual
8  language in the policies and by the express representations of the respective employees, agents,
9  and representatives of Defendants.

10      157.    Defendants have materially breached their duty of good faith and fair dealing
11  owed to Plaintiffs and members of the California Subclass in at least the following respects:

12          a.    by failing to make monthly deductions from the policies' accumulation
13                  accounts in accordance with the policies' terms and conditions;

14          b.    by failing to notify policyholders as soon as Conseco believed that
15                  their policies were under funded within the time frame required by the
16                  policies; and

17          c.    by requiring Plaintiffs and other California Subclass members to pay
18                  insurance charges on grounds unrelated to mortality rates, but rather for
19                  the purpose of recouping Defendants' losses caused by Defendants'
20                  unilateral failures to charge appropriate premiums and insurance expenses.

21      158.    As a direct and proximate result of Defendants' conduct, Plaintiffs and the
22  California Subclass have been damaged in an amount to be determined at trial. Plaintiffs' and
23  the California Subclass's damages include, but are not limited to, the loss of value in their life
24  insurance policy; any insurance charges Plaintiffs and the California Subclass have paid based on
25  Conseco's improperly increased insurance charges; and any damages suffered by Plaintiffs and
26  the California Subclass from foregoing opportunities to purchase other life insurance policies in
27  reliance on Defendants' promises regarding the terms and benefits of the policies at issue.

28

WHEREFORE, Plaintiffs demand relief in accordance with the "Prayer for Relief" set forth below, which is incorporated herein by this reference.

## JURY DEMAND

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court:

I.    Certify the Class as defined in this Complaint;

II.    Order Conseco to notify each and every member of the Class of the pendency of the claims in this action in order to give such persons an opportunity to seek relief;

III.    Enjoin Conseco from engaging in conduct that violates the Conseco Life Policies and the California Legal Remedies Act;

IV.    Enter a judgment in favor of Plaintiffs and the Class on all Counts;

V.    Award compensatory damages to Plaintiffs and the Class;

VI.    Award Plaintiffs and the Class actual damages under applicable law;

VII.    Award Plaintiffs and the Class a refund of all moneys Conseco acquired by means of its unlawful conduct;

VIII.    Award Plaintiffs and the Class treble damages under applicable law;

IX.    Award Plaintiffs and the Class punitive damages under applicable law;

X.    Create a common fund comprised of all damages to Class members;

XI.    Award Class counsel attorneys' fees pursuant to applicable law and the Common Fund Doctrine;

XII.    Award Plaintiffs and the Class interest as prescribed by law;

XIII.    Award Plaintiffs and the Class the costs of this suit; and

1    XIV.    Award Plaintiffs and the Class such other relief as this Court may deem to be just,

2    proper, and equitable.

3
     Dated: December 24, 2008                    Respectfully submitted,
4

5

6                                                David J. Millstein (CSB #87878)
                                                 dmillstein@millstein-law.com
7
                                                 MILLSTEIN & ASSOCIATES
8
                                                 100 The Embarcadero Suite 200
9                                                San Francisco, California 94105
                                                 Telephone:    (415) 348-0348
10                                               Facsimile:    (415) 348-0336

11
                                                 Scott D. Gilbert*
12                                                   gilberts@gotofirm.com
                                                 August J. Matteis, Jr.*
13                                                   matteisa@gotofirm.com
                                                 Jonathan M. Cohen*
14                                                   cohenj@gotofirm.com
15                                               Alyson A. Foster*
                                                     fostera@gotofirm.com
16                                               Benjamin Davidson*
                                                     davidsonb@gotofirm.com
17                                               GILBERT OSHINKSY LLP
18                                               1100 New York Avenue, NW
                                                 Suite 700
19                                               Washington, DC 20005
                                                 Telephone:    (202) 772-2200
20                                               Facsimile:    (202) 772-1924

21
                                                 Application for admission *pro hac vice* to be filed
22
                                                 *Counsel for Plaintiffs*
23

24

25

26

27

28