United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CEDRIC BRADY, et al., on behalf of a putative class,<br><br>            Plaintiffs,<br>  v.<br>CONSECO, INC. and CONSECO LIFE INSURANCE COMPANY,<br><br>            Defendants.<br>                                                              / | No. C 08-05746 SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

Defendants have filed a motion to dismiss plaintiffs' complaint. The motion is scheduled for hearing on July 31, 2009. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and VACATES the hearing and the case management conference scheduled for the same day. Having considered the papers submitted, and for good cause shown, the Court hereby GRANTS IN PART and DENIES IN PART defendants' motion.

**BACKGROUND**

**1.     Complaint Allegations**

Plaintiffs are seven California residents who bought life insurance policies from Massachusetts General Insurance Company some twenty years ago. FAC ¶ 2. Defendant Conseco Life Insurance Company ("Conseco Life") acquired Massachusetts General Insurance Company in 1996. *Id.* ¶ 22. The policies were marketed as "vanishing premium" policies, meaning that after the policyholder makes initial payments, the premiums "vanish" because the policy becomes self-funded. *Id.* ¶ 47.

The policies work as follows. The policyholder's premium payments are placed in an

"accumulation account." *Id.* ¶ 51. Every month, interest is added to the accumulation account. *Id.* ¶ 53. Interest is calculated at a variable rate of not less than 4.5% per year, based on Conseco's[1] expectation of future returns. *Id.* The policies also pay interest credits. *Id.* ¶ 54. The policyholder may take a loan against the value of her accumulation account at any time. *Id.* If she does not take out a loan, she receives interest credits for the unborrowed value of the account. *Id.* The credits are earned at the rate of 0.25% at the end of year 10, 0.25% at the end of year 15, and 0.125% at the end of years 17, 18, 19, and 20. *Id.* Conseco also deducts a fee, consisting of an "expense charge" and a "cost of insurance" charge, from the accumulation account each month. *Id.* ¶ 55. The expense charge cannot exceed $5.00 per month, while Conseco calculates the cost of insurance charge based on a formula it does not disclose. *Id.* Conseco provides policyholders with a table that discloses the maximum monthly cost of insurance charge. *Id.*

Policyholders may participate in the "optional payment provision" plan. *Id.* ¶ 59. So long as a policy is adequately funded, the policy holder may elect to stop making premium payments. *Id.* ¶ 92. The amount in the accumulation account must exceed the sum of the guaranteed cash value of the policy, the surrender charge (which is the fee Conseco charges if a policyholder elects to surrender his policy for its proceeds), and any loans the policyholder has taken out against the policy. *Id.* ¶¶ 59-63. If the policy becomes underfunded, it enters a 61-day grace period; 30 days before the end of that period, Conseco is required to give written notice to policyholders. *Id.* ¶ 92.

By November 20, 2005, Conseco discovered that it had made an error in calculating certain of its insurance policies. *Id.* ¶ 79. It nonetheless continued for three years to send policyholders annual statements stating that it was not charging a cost of insurance expense and that the values of the policies were continuing to increase. *Id.* ¶ 81.

Conseco contacted policyholders by letter dated October 7, 2008. The letters notified policyholders that due to "administrative issues related to your policy, you may not have previously been informed that your policy is Under Funded and additional premiums were required." *Id.* ¶ 87.

---

[1] Plaintiffs do not distinguish between Conseco, Inc. and Conseco Life in their complaint allegations.

2

Plaintiffs were notified that their policies were underfunded in amounts ranging from $23,339.66 to $346,133.77. *Id.* ¶ 98. Conseco also informed plaintiffs that the monthly cost of insurance charges on their policies would be increasing dramatically, in amounts ranging from $245.95 per month to $2,426.06 per month. *Id.*

Plaintiffs contend Conseco overstated the amount of the shortfalls in order to retroactively charge plaintiffs cost of insurance rates that differed from the amounts Conseco had disclosed to policyholders in their annual statements. *Id.* ¶ 89. They also contend that Conseco breached the terms of the policies by failing to give policyholders proper notice when it believed the policies were underfunded. *Id.* ¶ 91. In addition, plaintiffs contend that Conseco miscalculated the increases to their cost of insurance charges. *Id.* ¶¶ 99-101. Finally, plaintiffs claim that Conseco has breached the terms of the policies by preventing policyholders from surrendering their policies for their available cash value. *Id.* ¶¶ 102-04.

Plaintiffs filed suit on December 24, 2008 on behalf of a putative nationwide class consisting of: "All United States residents who own Lifetrend, CIUL3+ Universal Life, and Group Universal Life 2000/3000 that have been acquired and serviced by Conseco Life Insurance Company." *Id.* ¶ 106. The class includes a California subclass, consisting of all California residents who own the policies in question. *Id.* ¶ 107. Plaintiffs' First Amended Complaint ("FAC") alleges fourteen claims: breach of contract (count 1), promissory estoppel (count 2), violations of various sections of the California Legal Remedies Act (counts 3-7), violations of "consumer protection statues of certain states" (count 8), violation of the duty of good faith and fair dealing (count 9), breach of fiduciary duty (count 10), fraud (count 11), negligent misrepresentation (count 12), conversion (count 13), and declaratory relief (count 14).

## 2. Personal Jurisdiction

Conseco, Inc. is incorporated in Delaware and has its principal place of business in Carmel, Indiana. Decl. of Karl W. Kindig in Supp. of Defs. Mot. ("Kindig Decl.") ¶ 3. Conseco, Inc. is not licensed to sell or transact insurance in any state. *Id.* ¶ 5. It is a holding company that owns stock in

several subsidiaries. *Id.* ¶ 7. It has no offices or other property in California, has never maintained books or records in California, and has held no board of directors or shareholder meetings in this state. *Id.* ¶¶ 8, 11. Conseco Life is an indirect subsidiary of Conseco, Inc. *Id.* ¶ 14. Conseco, Inc. owns CDOC, Inc., which owns multiple subsidiaries including Washington National Insurance Company, which in turn owns Conseco Life. *Id.* ¶ 14.

## LEGAL STANDARDS

### 1.     Motion to Dismiss for Failure to State a Claim

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007). While courts do not require "heightened fact pleading of specifics," *id.*, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id.* at 1965. Plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Id.* In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

4

### 2. Motion to Dismiss for Lack of Personal Jurisdiction

Personal jurisdiction over a non-resident defendant may exist if the defendant has either a continuous and systematic presence in the state (general jurisdiction), or minimum contacts with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice" (specific jurisdiction). *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted). Where there is no federal statute applicable to determine personal jurisdiction, a district court should apply the law of the state where the court sits. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). California law requires only that the exercise of personal jurisdiction comply with federal due process requirements. *See id.* at 800-01.

"A defendant whose contacts with a state are 'substantial' or 'continuous and systematic' can be haled into court in that state in any action, even if the action is unrelated to those contacts." *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)). "This is known as general jurisdiction. The standard for establishing general jurisdiction is fairly high and requires that the defendant's contacts be of the sort that approximate physical presence." *Id.* (citations omitted). "Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." *Id.*

In order for a court to exert specific jurisdiction in accordance with due process, a nonresident defendant must have "'minimum contacts' with the forum state such that the assertion of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (quoting *Int'l Shoe*, 326 U.S. at 315). The Ninth Circuit employs a three-part test to determine whether the defendant has such minimum contacts with a forum state. First, the "nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum," thereby invoking the benefits and protections of the forum state. *Cybersell, Inc. v.*

*Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997) (quoting *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1998)). Second, the claim must "arise[] out of or result[] from the defendant's forum-related activities," and third, the exercise of personal jurisdiction over the defendant must be reasonable. *Pebble Beach Co.*, 453 F.3d at 1155. The plaintiff bears the burden of proving the first two conditions. *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). If the plaintiff carries this burden, "the defendant must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (citing *Schwarzenegger*, 374 F.3d at 802).

The plaintiff bears the burden of establishing the district court's personal jurisdiction over the defendant. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128-29 (9th Cir. 2003). If a district court acts on the defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff "need only demonstrate facts that if true would support jurisdiction over the defendant." *Id.* at 1129 (citation omitted). Unless directly contravened, the plaintiff's version of the facts is taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of deciding whether a prima facie case for personal jurisdiction exists. *Id.* (citation omitted); *see also Bancroft*, 223 F.3d at 1087.

## DISCUSSION

**1. Motion to Dismiss for Failure to State a Claim**

### A. California Legal Remedies Act (counts 3-7)

The parties agree that the California Supreme Court's recent decision in *Fairbanks v. Superior Court* precludes plaintiffs' claims under the California Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq. See* 46 Cal. 4th 56 (2009) (holding that life insurance is not a "service" subject to the CLRA's remedial provisions). Accordingly, defendants' motion to dismiss counts 3-7 of the FAC with prejudice is GRANTED.

### B.   Consumer protection statutes (count 8)

Defendants move to dismiss count 8 of the FAC, in which plaintiffs allege that defendants violated the "consumer protection statutes of certain states." Defendants contend that plaintiffs must, at a minimum, identify the statutes that defendants are alleged to have violated. Plaintiffs respond that the statutes at issue will depend on the states in which class members are located, and that they do not have access to this information before discovery begins. The Court finds that defendants have adequate notice of the allegedly wrongful conduct on which the purported violations of other states' consumer protection laws are based. Their motion to dismiss is DENIED without prejudice to reconsideration should plaintiffs fail to specify the statutes at issue after they have been given a reasonable opportunity to identify the states in which class members reside.

### C.   Damages

Defendants argue that plaintiffs' claims for breach of contract, promissory estoppel, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, fraud, and negligent misrepresentation (counts 1, 2, 9-12) should be dismissed because plaintiffs have failed to sufficiently allege that they suffered damages. According to defendants, the crux of plaintiffs' complaint is that defendants delayed in telling plaintiffs that their policies were underfunded. In defendants' view, even if this were true, it would not establish that plaintiffs suffered any harm. To the contrary, defendants claim that plaintiffs have benefitted from the delay because they were able to invest or otherwise use money to which they were not entitled.

The Court disagrees. In order to survive a motion to dismiss, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Here, plaintiffs allege that because of defendants' delay, it is now harder for them to buy life insurance (presumably because plaintiffs are now older). FAC ¶ 83. They also claim that they no longer have the opportunity to make incremental payments to maintain their policies and instead must make up the shortfall in one lump sum, *id.* ¶ 95, and that defendants have prevented them from cashing out the value of their policies, *id.* ¶ 104. The Court finds that these allegations are more than sufficient to establish a "plausible" claim

that plaintiffs were damaged by defendants' purportedly wrongful acts.

Accordingly, defendants' motion to dismiss is DENIED on this issue.

### D. Detrimental reliance

Defendants argue that plaintiffs' claims for promissory estoppel, fraud, and negligent misrepresentation (counts 2, 11, 12) should be dismissed because plaintiffs have failed to sufficiently allege that they detrimentally relied on defendants' representations. According to defendants, plaintiffs have not alleged that they would have done anything differently had they been given the correct information about the amounts they owed, and have therefore failed to adequately allege that they detrimentally relied on defendants' failure to charge policyholders the full amounts due on their accounts. This is a reprise of defendants' argument about damages. The extent to which plaintiffs' reliance on defendants' failure to inform them of the amounts due on their accounts was detrimental is an issue that the Court cannot take up at the pleading stage. Plaintiffs have alleged that they were harmed by being denied the opportunity to buy life insurance elsewhere, to make incremental payments to restore their policies, and to cash out their policies. FAC ¶ 83. These factual allegations are sufficient support for their contention that they relied to their detriment on defendants' representations.

Accordingly, the Court DENIES defendants' motion on this issue.

### E. Fiduciary Duty

Defendants argue that plaintiffs' claim for breach of fiduciary duty (count 10) must be dismissed because plaintiffs have failed to allege the existence of a fiduciary relationship and cannot do so because under California law, the insurer-insured relationship is not a fiduciary relationship.

"The insurer-insured relationship . . . is not a true 'fiduciary relationship' in the same sense as the relationship between trustee and beneficiary, or attorney and client. It is, rather, a relationship often characterized by unequal bargaining power in which the insured must depend on the good faith and performance of the insurer. This characteristic has led the courts to impose special and heightened duties, but while these special duties are akin to, and often resemble, duties which are also owed by

8

fiduciaries, the fiduciary-like duties arise because of the unique nature of the insurance contract, not because the insurer *is* a fiduciary." *Vu v. Prudential Prop. & Cas. Ins. Co.*, 26 Cal. 4th 1142, 1150-51 (2001) (citations omitted, emphasis original); *see also Solomon v. North American Life and Cas. Ins. Co.*, 151 F.3d 1132, 1138 (9th Cir. 1998) (holding that under California law, the insurer-insured relationship does not give rise to an independent action for common law breach of fiduciary duty).

According to plaintiffs, defendants in this case assumed a fiduciary duty by providing investment planning and advice to policyholders. Plaintiffs point out that a fiduciary duty may arise between the insurer and insured if, for instance, the insurer acts as a financial advisor. *See Negrete v. Fidelity and Guar. Life Ins. Co.*, 444 F. Supp. 2d 998, 1004 (C.D. Cal. 2006) (holding fiduciary relationship alleged where insurers acted as financial advisors and estate planning specialists); *Migliaccio v. Midland Nat'l Life Ins. Co.*, 436 F. Supp. 2d 1095, 1108 (C.D. Cal. 2006) (same).

The Court finds that plaintiffs have failed to allege facts supporting their contention that the defendant insurers assumed duties exceeding the typical insurer-insured relationship. Plaintiffs allege that the life insurance policies at issue are "investment vehicles," FAC ¶ 1, and that the policyholders could elect to stop making payments or to take loans out against the value of the policy, *id.* ¶ 63. These allegations do not establish that, like the insurers in *Migliaccio* and *Negrete*, defendants acted as financial advisors and estate planning specialists. To the contrary, plaintiffs' complaint allegations establish that policyholders had various options about how to use their policies, not that they relied on defendants for investment advice. Accordingly, the Court GRANTS defendants' motion to dismiss this cause of action with leave to amend.

### F. Declaratory relief

Defendants move to dismiss plaintiffs' claim for declaratory relief (count 14). Plaintiffs request "that the Court declare that their account values are not under funded and that Conseco may not charge the increased cost of insurance rates on a prospective basis." FAC ¶ 213. According to defendants, this claim is duplicative; plaintiffs' other causes of action will settle the questions of whether plaintiffs' accounts are under funded and whether defendants may increase the cost of insurance rates.

9

A party seeking declaratory relief must establish that there is a present and actual controversy between the parties. *City of Cotati v. Cashman*, 29 Cal. 4th 69, 80 (2002). "Any person claiming rights under a contract . . . may bring an action for a declaration of his or her rights or duties with respect to another." Hon. Robert I. Weil et al., *California Practice Guide: Civil Procedure Before Trial (The Rutter Group)* ¶¶ 6.186 *et seq.*, citing Cal. Code Civ. Pro. § 1060. "[A] court may decline to hear a claim for declaratory relief if adjudication of the issues raised in other claims would fully and adequately determine all matters actually in controversy between the parties." *Philips Med. Capital, LLC v. Med. Insights Diagnostics Cent., Inc.*, 471 F. Supp. 2d 1035, 1048 (N.D. Cal. 2007) (White, J.)

The Court finds that plaintiffs have alleged sufficient facts in support of their claim for declaratory relief. Defendants do not dispute that a present and actual controversy exists between the parties. Plaintiffs seek a declaration of their past and prospective rights under their insurance contracts, which is an appropriate subject for declaratory judgment. As to duplication, plaintiffs point out, accurately, that defendants have filed pleadings vigorously contesting plaintiffs' ability to demonstrate one or another of the essential elements of some of their claims. If that ultimately proved to be correct, then declaratory relief might be plaintiffs' primary, or only, remedy. The Court recognizes that it has discretion to dismiss duplicative claims for declaratory relief. Under all of the circumstances of this case, however, it would be premature to exercise such discretion at this early stage.

Accordingly, defendants' motion to dismiss this claim is DENIED.

### 2.     Motion to Dismiss for Lack of Personal Jurisdiction

Defendants contend that plaintiffs' claims against defendant Conseco, Inc. must be dismissed because this Court cannot exert personal jurisdiction over this defendant. Plaintiffs respond that this Court has both general and specific jurisdiction over Conseco, Inc. because of its independent contacts with this forum and because the contacts of Conseco Life are attributable to Conseco Inc.

#### A.     Conseco, Inc.'s independent contacts with California

Plaintiffs claim that Conseco, Inc. has such extensive contacts with this forum that it is subject

to the general jurisdiction of this Court. Plaintiffs rely on Conseco, Inc.'s 2008 Form 10-K filed with the Securities and Exchange Commission, in which Conseco, Inc. disclosed that sales to California residents accounted for 7.1 percent of its 2008 premiums.[2] It also disclosed that it held mortgage loans worth $2,195.4 million (12 percent of its invested assets) and that 7 percent of these loans were on properties in California.

The fact that Conseco, Inc. derives revenue from its subsidiaries that do business in California does not establish that the parent company has such "continuous and systematic," *see Bancroft*, 223 F.3d at 1087, contacts with forum that it is subject to the general jurisdiction of this Court. Plaintiffs do not describe the percentage of Conseco, Inc.'s revenue that is derived from insurance premiums. That only 7.1 percent of those premiums are held by California residents tends to undermine plaintiffs' argument that premiums sold in California make up a major portion of Conseco, Inc.'s business. Likewise, the fact that only 7 percent of mortgage loans issued by Conseco, Inc.'s subsidiaries are on properties in California suggests that its business in this state is not substantial. The Court therefore rejects plaintiffs' argument that Conseco, Inc.'s independent contacts with California make this Court's exercise of general jurisdiction proper.

### B.      Attribution of Conseco Life's contacts to Conseco, Inc.

Defendants do not dispute that this Court has personal jurisdiction over Conseco Life. Plaintiffs contend that this Court therefore also has jurisdiction over Conseco, Inc. because the subsidiary's contacts in this forum are attributable to the parent company. According to plaintiffs, Conseco Life is both the general agent of Conseco, Inc. and its alter ego.

"It is well-established that a parent-subsidiary relationship alone is insufficient to attribute the contacts of the subsidiary to the parent for jurisdictional purposes. Two exceptions to that general rule exist, however – subsidiary's contacts may be imputed to the parent where the subsidiary is the parent's alter ego, or where the subsidiary acts as the general agent of the parent." *Harris Rutsky & Co. Ins.*

---

[2] Neither party has placed Conseco, Inc.'s 2008 10-K in evidence. As defendants do not dispute plaintiffs' characterization of this document, the Court relies on plaintiffs' representations of what the 10-K says.

11

*Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003) (citations omitted).

### A. Alter ego

"To satisfy the alter ego exception to the general rule that a subsidiary and the parent are separate entities, the plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice. The plaintiff must show that the parent exercises such control over the subsidiary so as to render the latter the mere instrumentality of the former." *Id.* (citations omitted).

Here, plaintiffs allege that "Conseco, Inc. has caused . . . Conseco Life to engage in numerous transfers of substantial funds to other entities within the Conseco group of companies. Those transactions were not at arms length and have resulted in a substantial net loss to Conseco Life and its policyholders, leaving Conseco Life substantially undercapitalized." FAC ¶ 30. Plaintiffs also allege that Conseco Inc. has "improperly siphoned funds from Conseco Life . . . through overcharging for necessary administrative services." FAC ¶ 34.

While these allegations support plaintiffs' contention that Conseco Life has failed to observe corporate formalities, plaintiffs do not allege facts that are probative of the unity of interest between these two entities. Plaintiffs contend that Conseco, Inc. "exercises complete dominion and control over the affairs and actions of Conseco Life," FAC ¶ 27, but their factual allegations in support of this conclusion are minimal. Plaintiffs point to a statement by Conseco Life in its 2008 filing with the National Association of Insurance Commissioners. Conseco Life said that "All of the insurance companies . . . remain Members of the insurance holding company system of, and [are] ultimately controlled by Conseco, Inc." FAC ¶ 28. Plaintiffs also cite Conseco, Inc.'s website, which described its insurance subsidiaries as its "core insurance businesses." FAC ¶ 29.

These statements alone are insufficient. A parent corporation may be directly involved in the activities of its subsidiaries without incurring liability so long as that involvement is "consistent with the parent's investor status." *United States v. Bestfoods*, 524 U.S. 51, 72 (1998) . "Appropriate parental

involvement includes: "monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures." *Id.* The statements that Conseco, Inc. "ultimately controls" Conseco Life and that the subsidiary is part of the parent's "core" business are consistent with Conseco, Inc.'s investor status and do not demonstrate that Conseco Life is a "mere instrumentality" of Conseco, Inc. *See Harris Rutsky*, 328 F.3d at 1134. Accordingly, the Court finds that as of this point plaintiffs have not alleged sufficient facts to support a claim that Conseco Life is the alter ego of Conseco, Inc., such that former's contacts with California are attributable to the latter.

### B.     General agent

"To satisfy the agency test, the plaintiff must make a prima facie showing that the subsidiary represents the parent corporation by performing services sufficiently important to the parent corporation that if it did not have a representative to perform them, the parent corporation would undertake to perform substantially similar services." *See Harris Rutsky*, 328 F.3d at 1135 (citations and ellipses omitted).

Here, it is undisputed that Conseco Life is wholly owned by Conseco, Inc. Plaintiffs also note that Conseco, Inc. has said that its insurance subsidiaries are its "core insurance businesses," FAC ¶ 29, and cites Conseco Life's statement that it is ultimately controlled by Conseco, Inc., FAC ¶ 43. Plaintiffs also claim that Conseco, Inc. directed Conseco Life to send the October 7, 2008 letters to policyholders. FAC ¶ 44. These allegations are not probative of the degree of control Conseco, Inc. exerts over Conseco Life. Plaintiffs do not show that Conseco Life's presence in California substitutes for that of Conseco, Inc or that Conseco, Inc. is in the business of issuing insurance rather than the business of investing. *See Bellomo v. Penn. Life Co.*, 488 F. Supp. 744, 746 (C.D. N.Y. 1980), cited in *Harris Rutsky*, 328 F.3d at 1135 (9th Cir. 2003) (agency relationship exists if there is no basis "for distinguishing between the business of the parent and the business of the subsidiaries."). In addition, plaintiffs' allegations conflict with the representations in the declaration of Karl Kindig, which defendants cite in support of their motion. According to Kindig, Conseco, Inc. is merely a holding

company and does not sell or transact insurance in any state. Kindig Decl. ¶¶ 5-7. For these reasons, the Court finds that as of this point plaintiffs have not alleged sufficient factual support for the claim that Conseco Life is Conseco, Inc.'s general agent in California.

Plaintiffs request that they be permitted to conduct jurisdictional discovery test the representations in the Kindig declaration. The Court agrees that plaintiffs should be permitted to conduct discovery to find evidentiary support for their personal jurisdiction theories. *See Harris Rutsky*, 328 F.3d at 1135 (remanding to allow the plaintiff to conduct jurisdictional discovery).

Accordingly, defendants' motion to dismiss for lack of personal jurisdiction is GRANTED without prejudice. Plaintiffs may conduct discovery in order to amend their complaint to allege facts in support of their contention that this Court has personal jurisdiction over Conseco, Inc.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART AND DENIES IN PART defendants' motion to dismiss. If plaintiffs wish to file an amended complaint to allege facts in support of their claim for breach of fiduciary duty and in support their contention that this Court has personal jurisdiction over Conseco, Inc., they shall do so by **October 1, 2009**.

**IT IS SO ORDERED.**

Dated: July 29, 2009

SUSAN ILLSTON
United States District Judge

14